**Lee Roy BELZ and Herbert W. Belz, Appellant,**

v.

**Barbara Louise BELZ, Appellee.**

**No. 05-82-00111-CV.**

Court of Appeals of Texas, Dallas.

Jan. 13, 1984.

Rehearing Denied Feb. 16, 1984.

See also, Tex.App., 638 S.W.2d 158.

Philip S. Barker, Barker & Johnson, Dallas, for appellant.

Robert C. Sullivan, Jr., Dallas, for appellee.

Before STEPHENS, SPARLING and VANCE, JJ.

VANCE, Justice.

This is an appeal from a division of the community estate in a divorce action and from a joint and several judgment rendered against the appellants, who were also defendants in a consolidated case of conspiracy to defraud. Lee Roy Belz sued his wife, Barbara, for divorce. Barbara filed a cross action against Lee Roy for divorce, and in her petition alleged fraud on her community interest in the marital estate by Lee Roy for which she sought $50,000 actual damages plus exemplary damages of $150,000. She also brought separate suits against Lee Roy's brother, Herbert Belz,

and Charlene Hagstrom, alleging that they had conspired with Lee Roy to defraud her of her share of the community estate. The conspiracy to defraud suits were consolidated with the divorce action. The case was tried to a jury, which found that Charlene and Herbert had conspired with Lee Roy to defraud Barbara, but that Barbara had not sustained any damage as a result of the conspiracy. The jury did find for Barbara on four of her issues regarding fraud by Lee Roy and awarded her $17,200 in actual damages and $2,200 in exemplary damages. The jury further awarded Barbara $10,000 in attorney's fees. The trial court subsequently granted the divorce, rendered judgment jointly and severally against Lee Roy, Herbert, and Charlene for the $29,400 in damages awarded to Barbara by the jury for fraud, which included a $10,000 award for attorney's fees, and then divided the community estate based on "evidence of fraud and conspiracy to commit fraud amounting to cruelty." The property division included a $39,706 money judgment against Lee Roy in favor of Barbara, the reason for which is not explained in this record. As a result, Barbara received $164,270 in community assets and Lee Roy received $48,994 in community assets without taking into account the $29,400 awarded to Barbara on the fraud claim.

Lee Roy and Herbert together contend that the trial court (1) erred in admitting into evidence the out-of-court statements of the absent co-defendant, Charlene Hagstrom, (2) erred in denying their motion for instructed verdict, and (3) erred in awarding joint and several liability for damages and attorney's fees as it was contrary to the evidence and the jury findings. Herbert separately complains that the court erred in awarding a joint and several judgment against him as it was contrary to the jury findings. Lee Roy separately contends that the trial court abused its discretion in the division of the community estate. Charlene Hagstrom has not appealed the judgment against her.

We hold that because Barbara Belz failed to prove damages, a necessary element in

her cause of action for conspiracy to defraud, she cannot recover from any defendant to that cause of action. We, therefore, reverse that portion of the judgment which imposes joint and several liability and render a take nothing judgment on the conspiracy cause of action as to both Herbert and Charlene. We also hold that the trial court's division of the community estate was so unfair and inequitable as to constitute an abuse of discretion. We, therefore, reverse and remand the divorce action for a new property division. Finally, we hold that although the issue concerning Lee Roy's fraud on Barbara's community interest was tried as a separate cause of action for common law fraud for which Barbara received damages, both actual and exemplary, the issue is not a separate cause of action. Rather, it is a wrong by a spouse which, in a divorce action, may be considered by the trial judge in awarding a disproportionate division of the community estate to the injured spouse to compensate for the community property wrongfully expended by the other spouse, and is not a separate cause of action for which damages may be recouped by one spouse against the other during marriage. Accordingly, we reverse the $29,400 judgment against Lee Roy for fraud, and remand the issue for consideration by the trial court in the division of the community estate which we have already remanded for a new trial.

*Conspiracy to Defraud the Community*

Barbara alleged that Herbert and Charlene Hagstrom had conspired with Lee Roy to defraud her of community assets. The jury answered "we do" to the issues of whether they found that Lee Roy, Herbert, and Charlene had conspired to defraud Barbara but answered "zero" to the amount of actual and exemplary damages that Barbara had suffered as a result of this conspiracy. Barbara did not challenge this finding below nor does she do so on appeal.

■ A civil conspiracy has been defined as "a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." *Great National Life Ins. Co. v. Chapa*, 377 S.W.2d 632, 635 (Tex.1964). But in civil conspiracy, unlike criminal conspiracy, the mere fact that the existence of a conspiracy is proved is not, in and of itself, a recoverable harm. *Starling v. Hill*, 121 S.W.2d 648, 650 (Tex.Civ.App.— Waco 1938, no writ). The Texas Supreme Court has stated that "the gist of a civil conspiracy is the *damage* resulting from commission of a wrong which injures another, and *not the conspiracy itself.*" *Schlumberger Well Surveying Corp. v. Nortex Oil and Gas Corp.*, 435 S.W.2d 854, 856 (Tex.1968) (emphasis added). It follows from this statement that in order to recover a judgment for civil conspiracy there must be a finding of damages resulting from that conspiracy.

■ In the case before us, the damages awarded by the jury were in response to Barbara's issues of fraud by Lee Roy. The issues of fraud by Lee Roy were separate and distinct from the issues of conspiracy to defraud by Lee Roy, Herbert, and Charlene Hagstrom. As there were no findings of damages resulting from the conspiracy, there can be no judgment rendered against those accused of the conspiracy. Thus, we hold that Barbara failed to prove an essential element of her cause of action for conspiracy to defraud, i.e. damages, and therefore we reverse the judgment of the trial court below insofar as it imposes joint and several liability and render judgment that Barbara take nothing on her conspiracy cause of action. *Teledyne Isotopes, Inc. v. Bravenec*, 640 S.W.2d 387, 389 (Tex. App.—Houston [1st Dist.] 1982, writ ref'd n.r.e.); TEX.R.CIV.P. 434.

■ We note that Charlene Hagstrom is not a party to this appeal. In light of our disposition of this case, however, we hold that the joint and several judgment as to Charlene Hagstrom must also be reversed. As stated by our supreme court "[t]he rule that a reversal upon appeal by a party does not justify a reversal in favor of non-appealing parties is not invariable." *Truck Drivers, Chauffeurs, Warehousemen and Helpers, Local No. 941 v. Whit-*

*field Transportation, Inc.,* 154 Tex. 91, 273 S.W.2d 857, 863 (1954). The applicable standard is that reversal is required when the rights of appealing and nonappealing parties are so interwoven or dependent on each other as to require reversal of the whole judgment when a part thereof is reversed. *Turner, Collie & Braden, Inc. v. Brookhollow, Inc.,* 642 S.W.2d 160, 166 (Tex.1982); *Medical Personnel Pool of Dallas, Inc. v. Seale,* 554 S.W.2d 211, 214 (Tex.Civ.App.—Dallas 1977, writ ref'd n.r. e.). Barbara's right to recover a joint and several judgment could only exist if she had prevailed on her conspiracy cause of action. Since we have, based on the jury findings, rendered a take nothing judgment on this cause of action, we must necessarily reverse the joint and several judgment as to all the defendants.

■ Herbert also attacks the joint and several judgment against him for attorney's fees. He contends this was error because there was no legal basis for an award of attorney's fees as there was no finding of punitive damages. *Fitz v. Toungate,* 419 S.W.2d 708, 710 (Tex.Civ.App.— Austin 1967, writ ref'd n.r.e.). We agree and hold that Barbara take nothing against Herbert for attorney's fees.

### *Division of the Community Estate*

The trial court divided the community estate based on evidence of fraud and conspiracy to defraud amounting to cruelty. The court awarded Barbara the house valued at $73,500, the interest in a joint venture valued at $47,560, an I.R.A. account of $6,504, two cars worth a total of $3,000, furniture worth $3,000, and charged her with the indebtedness on the house of $9,000, leaving a net total of $124,564. The court awarded Lee Roy the interest in Belz Machine Works valued at $117,500, an automobile valued at $3,800 and charged him with the indebtedness for the 1980 and 1981 federal income taxes of $32,600, leaving a net total of $88,700. All values were established by stipulation of the parties and jury findings. After the court divided the community property, it then stated:

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Plaintiff, Barbara Belz, do have and recover of and from the Defendant, Lee Roy Belz, the sum of THIRTY–NINE THOUSAND SEVEN HUNDRED SIX AND 00/100 DOLLARS ($39,706.00) together with the interest thereon at the rate of nine percent (9%) per annum from the date of this judgment until paid, for which let execution issue if not timely paid.

This money judgment increases the total amount awarded to Barbara to $164,270. The judgment must necessarily be taxed against Lee Roy's share of the community, which reduces his total sum to $48,994. At this point, we have a division of 77 percent of the community estate to Barbara and 23 percent to Lee Roy.

Lee Roy argues that the court's division of the community property was so unfair and inequitable as to constitute an abuse of discretion. He first contends that the division was error because, according to Lee Roy, the judge stated that he did not believe $47,560, as found by the jury, to be the correct figure for the fair market value of a joint venture held to be part of the community estate and reformed it to $19,000. Lee Roy contends this was an abuse of discretion by the trial judge since it was done without proper motion or reasonable notice as required by TEX.R.CIV.P. 301. This argument is without merit, as the record does not reflect that the court reformed the value of the joint venture from the $47,560 found by the jury, as Lee Roy asserts.

Lee Roy also contends that the trial court abused its discretion by unequally dividing the marital property based upon a finding of fraud and conspiracy to commit fraud amounting to cruelty as there was no evidence to support such a finding. He argues that the only evidence of fraud on the community and of a conspiracy to defraud was the out-of-court statements of Charlene Hagstrom made to a private detective hired by Barbara. It appears from the record that after Charlene filed an an-

swer she disappeared and her whereabouts were unknown at the time of trial. The private investigator testified to the content of conversations he had with Charlene while she was unaware of his identity. Lee Roy argues that the testimony of the private investigator was hearsay as to him and could not be used against him merely because Charlene was a co-defendant. *Freestone County Title and Abstract Co. v. Johnson,* 594 S.W.2d 817, 818 (Tex.Civ. App.—Dallas 1980, no writ). He contends that in order for these statements to be admissible there must be evidence, independent of the hearsay statements, which establishes prima facie the existence of a conspiracy. *In re Bates,* 555 S.W.2d 420, 433 (Tex.1977).

 The court allowed Barbara to call Herbert as an adverse witness to supply independent evidence of the conspiracy before allowing the testimony of the private investigator to be heard by the jury. Herbert testified that he sent money to Lee Roy's children and that Lee Roy paid him back. He also testified that he had personally lent money to Charlene to buy a car, that she paid him back with a "hot" check, and that he had filed charges against her with the district attorney's office. After Herbert testified, the court allowed, over objection, the testimony of the private investigator. We hold that the admission of this hearsay testimony was error. As previously stated, in order for hearsay statements to be admissible as evidence of a conspiracy, there must be evidence, independent of the hearsay statements, which establishes prima facie the existence of a conspiracy. *Bates,* 555 S.W.2d at 433. Since we hold that Herbert's testimony falls short of supplying sufficient independent evidence of a conspiracy, then the admission of the hearsay statements by the investigator was erroneous.

 Contrary to Lee Roy's assertions, however, the testimony of the private detective was not the only evidence presented which would support a finding of fraud on the community by Lee Roy. Lee Roy's inability to account for certain community business income would support a finding of fraud on the community. We are now left with the question of whether the trial court's division of the community estate was so unfair and inequitable under all the circumstances as to constitute an abuse of discretion.

 There is no question that a trial court has wide discretion in dividing the estate of the parties and this division should be overturned only where it appears that it was so manifestly unjust and unfair as to constitute an abuse of discretion. *Murff v. Murff,* 615 S.W.2d 696, 698 (Tex. 1981); *Hedtke v. Hedtke,* 112 Tex. 404, 411, 248 S.W. 21, 23 (1923); *Pruske v. Pruske,* 601 S.W.2d 746, 750 (Tex.Civ.App.—Austin 1980, writ dism'd). It is also clear that the division need not be equal and that the trial court may consider many factors, such as fault or disparity of income, in exercising its discretion. *Murff,* 615 S.W.2d at 699. A money judgment may even be awarded to one spouse against the other in order to achieve an equitable division or to effectuate a right of reimbursement. *Id.* at 699; *Kidd v. Kidd,* 584 S.W.2d 552, 555 (Tex. Civ.App.—Austin 1979, no writ); *Wisdom v. Wisdom,* 575 S.W.2d 124, 125–26 (Tex. Civ.App.—Fort Worth 1978, writ dism'd); *Goren v. Goren,* 531 S.W.2d 897, 900 (Tex. Civ.App.—Houston [1st Dist.] 1975, writ dism'd).

 The court's division of property in this case, however, was clearly inequitable and manifestly unjust under the circumstances. The money judgment for $39,706 was not awarded in order to equalize the division. It appears, rather, that it was awarded to Barbara as damages for conspiracy and fraud on her community interest over and above the $29,400 award of damages and attorney's fees found by the jury. As previously stated, the court's division of the community property, including the money judgment for $39,706, resulted in an award of 77 percent of the property to Barbara and 23 percent of the property to Lee Roy. This results in a clearly inequitable distribution of the community estate and constitutes an abuse of discretion.

Accordingly, we hold that the court abused its discretion in its division of the community estate and under the Texas Supreme Court's ruling in *McKnight v. McKnight*, 543 S.W.2d 863 (Tex.1976), we reverse and remand for a new property division.

### Fraud on the Community

Barbara sued Lee Roy in a separate count for fraud based upon his intentional actions depriving her of property belonging to her by virtue of her interest in the community estate. Barbara alleged that Lee Roy made false and misleading statements or, alternatively, that he failed to disclose material facts concerning the existence and disposition of certain community assets which he had a duty to disclose. She further alleged that she, in reliance of these statements, sustained actual damages of at least $50,000. She also alleged that Lee Roy acted willfully and intentionally and, therefore, she was entitled to $150,000 in exemplary damages. The court submitted five issues as to whether Lee Roy had intentionally misrepresented the extent of the community estate to Barbara, to her detriment, and the jury found in four of them that he had. The jury then found actual damages of $17,200 plus exemplary damages of $2,200. In addition, the jury found that $10,000 in attorney's fees had been expended by Barbara. The judge then rendered judgment against Lee Roy, Herbert, and Charlene jointly and severally for $29,400, the actual and exemplary damages plus the attorney's fees. Having already reversed the joint and several judgment against Herbert and Charlene, we must now consider the $29,400 judgment for fraud against Lee Roy.

We begin by holding that the trial court's submission of the issue of Lee Roy's fraud on Barbara's community interest as a separate common law action in tort for fraud was erroneous, and that in actuality Barbara had only a claim for the value of her interest in the community property wrongfully displaced by Lee Roy. The basis for this claim is Lee Roy's fraud on the community which may be asserted, in the context of a divorce and property division, for the trial court's consideration in the division of the estate of the parties. We are aware of the Texas Supreme Court's decision in *Bounds v. Caudle*, 560 S.W.2d 925 (Tex.1977), in which the court abrogated the common law rule of interspousal tort immunity for intentional torts, and of the San Antonio Court of Appeals' decision in *Mogford v. Mogford*, 616 S.W.2d 936 (Tex.Civ.App.—San Antonio 1981, writ ref'd n.r.e.), which held that a trial court could properly render judgment, as part of the divorce proceedings, against a spouse for injuries resulting from willful and intentional torts committed upon the spouse during marriage. We are also aware that fraud is an intentional tort. Since in this case, however, the fraud was not perpetrated upon Barbara to the detriment of her separate estate, but was perpetrated upon her interest in the community estate of the parties, it is distinguishable from *Bounds* and *Mogford* which both involved actions for personal injuries to the spouse resulting from intentional torts, for which the recovery belongs to the separate estate.

We know of no precedent in Texas for allowing one spouse to sue the other in tort for common law fraud, as a separate cause of action, based upon a depletion of the community estate prior to dissolution of the community estate, either by divorce or the death of one of the spouses. Rather, a claim of fraud on the community is a means to an end, either to recover specific property wrongfully conveyed, *Mangum v. Mangum*, 184 S.W.2d 338 (Tex.Civ.App.—San Antonio 1944, no writ); *Brown v. Brown*, 152 S.W.2d 790 (Tex.Civ.App.—Galveston 1941, writ ref'd w.o.m.), to recover, after the death of the donor spouse, from the donee the value of inter vivos gifts made by a spouse in fraud of the other's rights, *Carnes v. Meador*, 533 S.W.2d 365 (Tex.Civ.App.—Dallas 1975, writ ref'd n.r.e.); *Redfearn v. Ford*, 579 S.W.2d 295 (Tex.Civ.App.—Dallas 1979, writ ref'd n.r.e.), or, as here, to obtain a greater share of the community estate upon divorce, in order to compensate the

wronged spouse for his or her lost interest in the community estate. *Horlock v. Horlock*, 533 S.W.2d 52 (Tex.Civ.App.—Houston [14th Dist.] 1975, writ dism'd); *Reaney v. Reaney*, 505 S.W.2d 338 (Tex.Civ.App.—Dallas 1974, no writ). In the context of a divorce and property division, fraud on the community is a wrong by one spouse which the court may consider in its division of the estate of the parties and which may justify an unequal division of the property. Furthermore, as we have stated earlier in this opinion, the court may render a personal judgment against one spouse in order to effect an equitable distribution of the property and as a means to recoup for the defrauded spouse the value of property lost from the estate, by reason of the wrongful acts of the other spouse. A judgment for fraud on the community, however, is not one which may stand alone in the absence of a property division pursuant to a termination of a marriage by divorce.

We hold, therefore, that no separate cause of action for fraud exists in this case, although Barbara does have a right to claim fraud on her community interest by Lee Roy for his actions in depleting the community estate. She has a right to recover, in conjunction with the property division, the value of her community interest in the property which the trier of fact finds to be depleted wrongfully from the estate. Thus, the judgment for fraud is reversed and upon retrial the court may consider fraud on the community in its division of the community estate.

Judgment is reversed and rendered in part and remanded in part.