Paul LUCY, Appellant,

v.

Joan Waugh LUCY, Appellee.

No. 08–02–00523–CV.

Court of Appeals of Texas,
El Paso.

April 12, 2005.

John P. Mobbs, El Paso, for Appellant.

Karen L. Landinger, Ray, Valdez, McChristian & Jeans, P.C., El Paso, for Appellee.

Before Panel BARAJAS, C.J., McCLURE, and CHEW, JJ.

## OPINION

ANN CRAWFORD McCLURE, Justice.

This is an appeal from a division of property incident to divorce. At issue is an amorphous award of "reimbursement" in favor of Joan Lucy which is also characterized in the final decree as a judgment to equalize division. On appeal, Paul Lucy complains that the evidence is legally or factually insufficient to support the reimbursement award. For the reasons that follow, we affirm.

## FACTUAL SUMMARY

The parties were married in 1991 and separated in 1996. Each had children from a prior marriage and considerable separate property. A decree of divorce was entered in December 1996. When disputes arose concerning the division of property, Paul filed a petition for bill of review and Joan sought post-judgment partition of previously undivided assets. The trial court set aside the decree and following a bench trial, rendered judgment confirming the parties' separate property and dividing the community estate.

As Paul frames the issues, this appeal concerns Joan's recovery upon two reimbursement claims. The first relates to rental income. At the time of the marriage, Paul owned a home located at 10632 Quezada Street. During the marriage, the parties resided in Joan's house located at 10900 Dave Marr. Characterization of these houses is not in issue. When the parties separated, Paul told Joan that he could not move back in to the Quezada property because it had been rented. Joan claimed that she did not know the property had been rented, nor had she seen any of the rental income. She sought to recover $43,200, representing the rental income from the property during marriage. The second issue relates to the depletion of a bank account. Prior to marriage, Joan's checking account contained $53,947.84. She added Paul's name to the account and gave him free access to write checks as he saw fit. Joan listed the account as community property on her inventory, and the parties ultimately stipulated to characterization at trial. At that time, the account balance was $10,244.72. In her testimony, Joan highlighted unusual withdrawals Paul had made. For example, she testified that one month he had withdrawn $13,000 but she never found out why. She claimed that Paul wrote checks totaling $170,348. She requested reimbursement for $43,703.12, representing the difference in the beginning and ending balance of the account.

## THE NATURE OF THE PLEADINGS

In her pleadings, Joan alleged that Paul had committed economic torts against the community estate as well as spousal torts against her personally as a result of the transmission of a sexually transmissible disease, assault, and intentional infliction of emotional distress. Applicable to our analysis, Joan sought a disproportionate division based upon fault in the breakup of the marriage, the wasting of community assets, the size and nature of the parties' separate estates, common law reimbursement, statutory reimbursement (economic contribution),[1] Jensen[2] reimbursement,

---

1. See TEX.FAM.CODE ANN. § 3.401 et. seq. (Vernon Supp.2004–05).

2. See Jensen v. Jensen, 665 S.W.2d 107 (Tex.1984)(allowing reimbursement for community time, toil, talent, and labor contribut-

breach of fiduciary duty, mismanagement of the marital estate, and fraud. She also sought "a judgment against [Paul] for the losses to the community estate and [Joan], occasioned by the improper conduct of [Paul]."

## TERMS OF THE DECREE

The final decree contains the following paragraph:

*Judgment and Lien to Equalize Division*

The Court finds that each party has claims for reimbursement and the court having considered the evidence and the merits of such claim and, having offset said claims, further finds that [Joan] is entitled to a judgment against [Paul] in the amount of $28,000.00.

All other claims for reimbursement were denied. The decree also specifies that Joan was granted a divorce on the ground of cruelty.

## FINDINGS OF FACT

Paul requested that the trial court prepare both traditional and statutory findings of fact and conclusions of law. *See* TEX.FAM.CODE ANN. 6.711; TEX.R.CIV.P. 296. The statute limits the required findings to (1) the characterization of each party's assets, liabilities, claims, and offsets on which disputed evidence has been presented; and (2) the value or amount of the community estate's assets, liabilities, claims, and offsets on which disputed evidence has been presented. It does not restrict the court's ability to make additional findings pursuant to Rule 296. In this instance, however, the trial court entered only the statutory findings and the record does not reveal that additional find-

ings were requested. Pertinent to our analysis, the court found:

## VALUE OF CLAIMS AND OFFSETS

### Reimbursement Claims of [Paul]

1) For community time, toll, [sic] efforts and funds used to improve wife's separate home (residence of parties) @ 1900 Dave Marr, El Paso, Texas.

Amount Claimed: $78,000

Amount Found by Court: $23,500

\* \* \* \* \*

### Reimbursement Claims of [Joan]

1) For reimbursement on rental income received by Husband from rental of his separate property house at 10632 Quezada St., El Paso, Texas. Mrs. Lucy claimed she had no knowledge he was renting his house and receiving income. Rented for 36 months.

Amount Claimed: (36 mos × $1,200 mo.) = $43,200

Disposition: Claim allowed

\* \* \* \* \*

6) Reimbursement for Mrs. Lucy's separate property funds used by Mr. Lucy for various purposes (some known, some unknown to her, as itemized by amounts in account exhibits). Funds from wife's s/p[3] account at GECU # 8050037

Amount Claimed: $43,703

Amount found by Court from evidence: $9,148.80

### Offsets as determined by Court

The husband's allowed claim for $23,500 for improvements done to wife's s/p home (the residence of the parties), was offset against the wife's allowed claim of $43,200 for the husband's rental income.

---

ed toward the enhancement of a separate estate).

3. "S/p" is frequently used as a shorthand reference for separate property.

The resulting balance of $19,700 was added to the other claim allowed to the wife for $9,148 on her claim for separate property funds used by Mr. Lucy.

**Net Balance on Reimbursement Claims:** A $28,848 reimbursement owed by Mr. Lucy to Mrs. Lucy.

The court further entered a finding of fault against Paul "for considerable emotional and physical abuse."

## SUFFICIENCY OF THE EVIDENCE

In his first issue for review, Paul challenges the sufficiency of the evidence to support reimbursement for rental income. His second issue complains that the evidence is insufficient to support reimbursement of money Paul withdrew from Joan's bank account. Our analysis must of necessity employ overlapping appellate standards of review. We first address the distinctions between them and how they overlap in the family law arena.

### Standards of Review

#### Traditional Sufficiency Review

In considering a legal sufficiency or "no evidence" point, an appellate court considers only the evidence which tends to support the jury's findings and disregards all evidence and inferences to the contrary. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965); *Worsham Steel Co. v. Arias*, 831 S.W.2d 81, 83 (Tex.App.-El Paso 1992, no writ). If any probative evidence supports the jury's determination, it must be upheld. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951); *Neily v. Aaron*, 724 S.W.2d 908, 913 (Tex.App.-Fort Worth 1987, no writ).

A factual sufficiency point requires examination of all of the evidence in determining whether the finding in question is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate*, 244 S.W.2d at

660; *Worsham Steel Co.*, 831 S.W.2d at 81. The reviewing court cannot substitute its conclusions for those of the jury. If there is sufficient competent evidence of probative force to support the finding, it must be sustained. *Carrasco v. Goatcher*, 623 S.W.2d 769 (Tex.App.-El Paso 1981, no writ). It is not within the province of this court to interfere with the jury's resolution of conflicts in the evidence or to pass on the weight or credibility of the witness's testimony. *Benoit v. Wilson*, 150 Tex. 273, 239 S.W.2d 792 (1951); *Reynolds v. Kessler*, 669 S.W.2d 801, 807 (Tex.App.-El Paso 1984, no writ). Where there is conflicting evidence, the jury's verdict on such matters is generally regarded as conclusive. *Clark v. National Life & Accident Ins. Co.*, 145 Tex. 575, 200 S.W.2d 820, 821 (1947); *Oechsner v. Ameritrust Texas, N.A.*, 840 S.W.2d 131, 136 (Tex.App.-El Paso 1992, writ denied). In a bench trial, findings of fact are the equivalent of a jury answer to the special issues. *Associated Telephone Directory Publishers, Inc. v. Five D's Publishing Co., Inc.*, 849 S.W.2d 894, 897 (Tex.App.-Austin 1993, no writ); *Lorensen v. Weaber*, 840 S.W.2d 644 (Tex.App.-Dallas 1992), *rev'd on other grounds sub nom.; Exxon Corp. v. Tidwell*, 816 S.W.2d 455, 459 (Tex.App.-Dallas 1991), *rev'd on other grounds*, 867 S.W.2d 19 (Tex.1993); *A–ABC Appliance of Texas, Inc. v. Southwestern Bell Tel. Co.*, 670 S.W.2d 733, 736 (Tex.App.-Austin 1984, writ ref'd n.r.e.).

#### Abuse of Discretion Standard

Most of the appealable issues in a family law case are evaluated against an abuse of discretion standard, be it the issue of property division incident to divorce or partition, conservatorship, visitation, or child support. *Tate v. Tate*, 55 S.W.3d 1, 5–6 (Tex.App.-El Paso 2000, no pet.). An appeal directed toward demon-

strating an abuse of discretion is one of the tougher appellate propositions. While the appellant may challenge the sufficiency of the evidence to support findings of fact, in most circumstances, that is not enough. If, for example, an appellant is challenging the sufficiency of the evidence to support the court's valuation of a particular asset, he must also contend that the erroneous valuation caused the court to abuse its discretion in the overall division of the community estate.

■ The term "abuse of discretion" is not susceptible to rigid definition. *Landon v. Jean–Paul Budinger, Inc.*, 724 S.W.2d 931, 934 (Tex.App.-Austin 1987, no writ). The test for an abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action, but whether the court acted without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex.1985), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986), *citing Craddock v. Sunshine Bus Lines*, 134 Tex. 388, 133 S.W.2d 124, 126 (Comm.App.–1939, opinion adopted). Stated differently, the appropriate inquiry is whether the ruling was arbitrary or unreasonable. *Smithson v. Cessna Aircraft Company*, 665 S.W.2d 439, 443 (Tex.1984); *Landry v. Travelers Insurance Co.*, 458 S.W.2d 649, 651 (Tex.1970). The mere fact that a trial judge may decide a matter within his discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Southwestern Bell Telephone Co. v. Johnson*, 389 S.W.2d 645, 648 (Tex.1965); *Jones v. Strayhorn*, 159 Tex. 421, 321 S.W.2d 290, 295 (1959).

### Which Standard Do We Apply?

■ The Family Code requires that the trial court divide the estate of the parties in a manner that is just and right having due regard for the rights of each party. TEX.FAM.CODE ANN. § 7.001 (Vernon 1998). There is no requirement that the court effectuate an equal division. *Murff v. Murff*, 615 S.W.2d 696, 699 (Tex.1981). The courts have determined a number of factors which may justify a disproportionate division. *Id.* at 698–99.

■ Joan specifically pled that the equities justified a disproportionate division as well as an equalizing judgment, if necessary. In reviewing the equitable remedy fashioned by the trial court in achieving a just and right division, we must determine not only whether the trial court's findings are supported by the evidence, we must also determine whether error, if established, caused the trial court to abuse its discretion. We have repeatedly held that once it has been determined that the abuse of discretion standard applies, an appellate court should engage in a two-pronged inquiry: (1) Did the trial court have sufficient information upon which to exercise its discretion; and (2) Did the trial court err in its application of discretion? *Knight v. Knight*, 131 S.W.3d 535, 539 (Tex.App.-El Paso 2004, no pet.); *Sandone v. Miller–Sandone*, 116 S.W.3d 204, 206 (Tex.App.-El Paso 2003, no pet.); *Lindsey v. Lindsey*, 965 S.W.2d 589, 591 (Tex.App.-El Paso 1998, no pet.). The traditional sufficiency review comes into play with regard to the first question; however, our inquiry cannot stop there. We must proceed to determine whether, based on the elicited evidence, the trial court made a reasonable decision. Stated inversely, we must conclude that the trial court's decision was neither arbitrary nor unreasonable.

### A Creature Called Reimbursement

■ Family law practitioners have dealt with reimbursement for decades, al-

though the magic word did not appear in the Texas Family Code until the Legislature created a statutory right of economic contribution in 2001. TEX.FAM.CODE ANN. Title 1, Chapter 3, Subchapter E, § 3.401 *et seq.*, added by Acts 2001, 77th Leg., R.S. ch. 838, § 5, eff. Sept. 1, 2001. Let us emphasize that although Joan pled for economic contribution, the claims at issue here do not arise from the statute. Consequently, we are dealing with common law theories of economic recovery. Indeed, although case law is replete with references to a "right" of reimbursement, the rule of reimbursement is purely an equitable one. *Vallone v. Vallone*, 644 S.W.2d 455, 458 (Tex.1982), *citing Colden v. Alexander*, 141 Tex. 134, 171 S.W.2d 328 (1943). It is not an interest in property or an enforceable debt, *per se*, but an equitable right which arises upon dissolution of the marriage through death, divorce, or annulment. *Id., citing Burton v. Bell*, 380 S.W.2d 561 (Tex.1964); *Dakan v. Dakan*, 125 Tex. 305, 83 S.W.2d 620 (1935). An equitable right of reimbursement arises when the funds or assets of one estate are used to benefit and enhance another estate without itself receiving some benefit. *Id.*

 A claim for reimbursement of funds expended by an estate for improvements to another estate is to be measured by the enhancement value to the benefitted estate. *Kimsey v. Kimsey*, 965 S.W.2d 690, 700 (Tex.App.-El Paso 1998, pet. denied), *citing Anderson v. Gilliland*, 684 S.W.2d 673, 675 (Tex.1985). This measurement is applied whether the claim for reimbursement is based on funds expended for payment of a purchase money debt or for a capital improvement to another estate. *Id., citing Penick v. Penick*, 783 S.W.2d 194, 197 (Tex.1988). The party claiming the right of reimbursement has the burden of proof. *Id., citing Jensen v.*

*Jensen*, 665 S.W.2d 107, 110 (Tex.1984); *Vallone*, 644 S.W.2d at 459.

 Since common law reimbursement is an equitable claim, a court of equity is bound to look at all facts and circumstances to determine what is fair, just, and equitable. *Id., citing Penick*, 783 S.W.2d at 197–98; *Magill v. Magill*, 816 S.W.2d 530, 535 (Tex.App.-Houston [1st Dist.] 1991, writ denied). This allows for consideration of offsetting benefits. *Kimsey*, 965 S.W.2d at 700–01, *citing Jensen*, 665 S.W.2d at 109; *Magill*, 816 S.W.2d at 535. Great latitude must be accorded to the trial court in applying equitable principles to value such a claim, for it is not just a balancing of the ledgers between competing marital estates. *Id.* at 701, *citing Penick*, 783 S.W.2d at 198; *Magill*, 816 S.W.2d at 535. The discretion to be exercised in evaluating a claim for reimbursement is equally as broad as the discretion exercised by a trial court in making a just and proper division of the community estate. *Id., citing Penick*, 783 S.W.2d at 198.

The crux of Joan's complaint was that Paul took community income of which she was unaware and spent it without her knowledge. This was the cornerstone of her claim that Paul wasted community property, breached his fiduciary duty, and mismanaged the community estate. Because of his conduct, Joan sought a disproportionate division and, if necessary, an equalizing judgment.

There is no dispute that the rental income was community property. *See* TEX. FAM.CODE ANN. § 3.002 (Vernon 1998); *In re Marriage of Louis*, 911 S.W.2d 495, 497 (Tex.App.-Texarkana 1995, no writ) (income from separate property is community property). Paul argues that there is no legal basis for allowing "reimbursement" based on receipt of community income by one spouse when the other

spouse is unaware of the receipt. Paul also complains of the award of $9,148.80 for expenditures made from Joan's bank account. He argues that the trial court failed to explain its calculation, merely stating that the reimbursement amount was found from evidence. He contends that since Joan admitted the account was community property, she was not entitled to reimbursement.

### *If It Walks Like a Duck* ...

We come now to the central issue. Must we reverse because the trial court mislabeled the proper theory of recovery? Is it error to compensate the community estate for economic torts committed by a spouse simply because the court labeled the relief as "reimbursement?"

 Texas recognizes the concept of fraud on the community which the trial court may consider in rendering a disproportionate division. *Schlueter v. Schlueter*, 975 S.W.2d 584, 588 (Tex.1998), *citing Belz v. Belz*, 667 S.W.2d 240, 247 (Tex. App.-Dallas 1984, writ ref'd n.r.e.). A claim of fraud on the community is a means either to recover specific property wrongfully conveyed or to obtain a greater share of the community estate upon divorce in order to compensate the wronged spouse for her lost interest in the community estate. *Belz*, 667 S.W.2d at 246–47. A trial court may also award a money judgment to one spouse against the other in order to achieve an equitable division of the community estate. *Schlueter*, 975 S.W.2d at 588, *citing Murff*, 615 S.W.2d at 699 (allowing money judgment against husband in division of community property where he had substantial sums in savings before separation that had disappeared by the time of trial). Because the amount of

the judgment is directly referable to a specific value of lost community property, it will never exceed the total value of the community estate. *Id.* A wronged spouse should not suffer simply because the other spouse has depleted the community such that there is not enough left to effect a just and right division. *Id.* Joan asked the court for a disproportionate division, including a money judgment if necessary, to compensate the community estate for Paul's fraudulent conduct. *Schlueter* also recognized that wasting community assets may give rise to a similar claim. *Schlueter*, 975 S.W.2d at 589. Mrs. Schlueter alleged that her husband had, without her knowledge or consent, wrongfully depleted the community assets. "Such behavior is properly considered when dividing a community estate." *Id.*

### *Analysis*

 In this context, we review the evidence. Paul admitted receiving the rental payments and cashing the checks. He testified that he would use the funds to pay the mortgage and for incidental living expenses. While he claimed to have given Joan a portion of the money, Joan testified that he kept the cash and didn't give her any. Paul acknowledged that the income was community property, but complained that if his expenditures did provide some basis for reimbursement, then the reimbursement should be limited to net income. *Penick*, 783 S.W.2d at 197.[4]

With regard to the bank account, Paul complains that the trial court failed to explain its calculation, merely stating that the award was based on the evidence. He argues that Joan admitted the account was community property and that she was not

4. He alleged that the income totaled $36,300 rather than $43,200 and that he was entitled to a deduction for maintenance expenses of at least $2,000 and mortgage payments of $17,400 ($580 × 30 mos.), which would equal reimbursement of $16,900.

entitled to reimbursement absent a tracing of her separate property funds in the account. He also claims that she did not show that Paul's separate estate benefitted at the expense of her separate property or the community estate.

In each of these instances, Paul acknowledges the conflicting evidence. Nevertheless, the trial court as the trier of fact was the sole judge of the credibility of the evidence, what weight was to be assigned to it, and how to resolve inconsistencies. *Carrasco*, 623 S.W.2d at 772. The court obviously disregarded Paul's testimony and believed Joan's. Paul's underlying argument is that Joan was not entitled to "reimbursement" on that basis or that she failed to establish the amount of the offsetting benefit to the wronged estate. The findings are limited to characterization and value; they do not encompass the factors which the trial court may have considered in making a disproportionate division. We conclude that the evidence supports a disproportionate division and that Paul's conduct was a factor which the trial court could rightly consider. Simple mathematical calculations derived from the findings of fact reveal that the trial court valued the community estate at $100,922. Without the equalizing judgment, the court effectuated roughly a 55%–45% division in favor of Paul. Imposition of the judgment results in a 73%–27% division in favor of Joan. We conclude that the constituent elements are properly aligned: the pleadings support the evidence, the evidence supports the findings of fact, and the findings support the judgment. We find no abuse of discretion in attaching a misnomer to the remedy employed. Finding no abuse of discretion, we overrule both issues for review and affirm the judgment of the trial court.