Opinion filed March 23, 2006












 
 
  
 
 







 
 
  
 
 




Opinion filed March 23, 2006

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                   __________

 

                                                          No. 11-04-00161-CV 

 

                                                    __________

 

                             KENNETH RUSSELL NELSON, Appellant

 

                                                             V.

 

                                    BESSIE
MAE NELSON, Appellee

 



 

                                         On
Appeal from the 266th District Court

 

                                                           Erath
County, Texas

 

                                                Trial
Court Cause No. CV-26835

 



 

                                                                   O
P I N I O N

 

This is an appeal from a division of property
incident to divorce.  In seven issues,
Kenneth Russell Nelson, appellant, challenges the trial court=s division of the community estate and
its economic reimbursement and economic contribution awards.  We affirm in part and reverse and remand in
part.

                                                               Background
Facts








The parties were married on April 9, 1995.  Prior to their marriage, appellant purchased
five acres of land from his parents.  He
still owed them $8,000 on the purchase price when he married appellee, Bessie
Mae Nelson.  Appellee owned a home in Stephenville.  She sold her house prior to the marriage and
realized approximately $17,500.  She
deposited this money into appellant=s
checking account.

The parties built a home on appellant=s five-acre tract.  Construction started several months before
the marriage.  The parties did most of
the work themselves and, prior to their marriage, spent $16,616.51 from appellee=s house sale on construction
costs.  The house was substantially
complete at the time of the marriage, needing only interior finishing
work.  The parties spent approximately
$5,600 in community funds to complete the house.

Appellee did not learn until after the wedding
that her husband still owed his parents money for his land.  They ultimately paid his parents $2,000 in
full satisfaction of that debt.  During
their marriage, the parties also purchased a 12.03-acre tract adjacent to the
original five-acre tract from appellant=s
parents.

The trial court granted the parties a
divorce.  It awarded each an undivided
one-half interest in the 12.03-acre tract purchased during their marriage and
confirmed that the five-acre tract and improvements were appellant=s separate property.  The court found that the community estate had
a claim for an economic contribution of $18,600 with respect to the five-acre
tract and that appellee=s
separate estate had a reimbursement claim of $16,600.  Appellee received an excess allocation of
community property of $11,000.  After
offsetting this against appellee=s
reimbursement claim and her portion of the economic contribution claim, the
court awarded appellee $14,800 payable by appellant and ordered him to sign a
promissory note to appellee for this amount, secured by a lien on his five-acre
tract.  Finally, the court conditionally
appointed a receiver to sell the 12.03-acre tract.

                                                                         Issues








Appellant contends the trial court erred by
awarding a claim for economic contribution for the payment of his debt to his
parents, by conditionally ordering the appointment of a receiver to sell the
parties=
community property, by characterizing the $16,616.51 spent from the net
proceeds of appellee=s
home sale as appellee=s
separate property, by finding that appellee was entitled to reimbursement of
those funds, by finding that the community estate was entitled to economic
contribution for capital improvements to appellant=s
separate property, and by placing a lien on appellant=s
separate property to ensure a just and right division of assets and liabilities
of the marriage.

                                                                      Discussion

The trial court has broad discretion when dividing
the marital estate at divorce.  Murff
v. Murff, 615 S.W.2d 696, 698 (Tex. 1981). 
We may reverse that division only if the trial court clearly abused its
discretion and if the error materially affects the court=s
just and right division of the property. 
Jacobs v. Jacobs, 687 S.W.2d 731, 732-33 (Tex. 1985).  Under an abuse of discretion standard, legal
and factual sufficiency challenges are not independent reversible grounds of
error but are relevant factors in assessing whether the trial court abused its
discretion.  Beaumont Bank, N.A. v.
Buller, 806 S.W.2d 223, 226 (Tex. 1991).

Economic Contribution for the Repayment of
Appellant=s Debt to
His Parents.

Appellant contends the trial court erred by awarding
a claim for economic contribution for the payment of appellant=s debt to his parents because that debt
was not secured by a lien.  Economic
contribution is a statutory right of reimbursement for contributions by one
marital estate to another.  Tex. Fam. Code Ann. ' 3.402
(Vernon Supp. 2005) provides six instances in which an economic contribution
claim may be created. These include the reduction of the principal amount of a
prenuptial debt secured by a lien on property owned before the marriage.  Section 3.402(a)(1).

The parties do not dispute that, when they
married, appellant owed his parents $8,000 for the five-acre tract and that
this debt was satisfied during their marriage for $2,000.  The only dispute is whether the
statutory-required lien existed.  The
Family Code does not define Alien@ or Adebt
secured by lien,@ and
neither party cites any authority for what is required.








We turn to other Texas statutes for guidance.  Tex.
Bus. & Com. Code Ann. '
24.002(8) (Vernon 2002) defines A[l]ien@ as a Acharge
against or an interest in property to secure payment of a debt or performance
of an obligation, and includes a security interest created by agreement, a
judicial lien obtained by legal or equitable process or proceedings, a
common-law lien, or a statutory lien.@  The statute defines A[v]alid
lien@ as a Alien that is effective against the
holder of a judicial lien subsequently obtained by legal or equitable process
or proceedings.@  Tex.
Bus. & Com. Code Ann. '
24.002(13) (Vernon 2002).  Tex. Bus. & Com. Code Ann. ' 9.102(52) (Vernon Supp. 2005) defines A[l]ien creditor@
to include Aa
creditor that has acquired a lien on the property involved by attachment, levy,
or the like; an assignee for benefit of creditors from the time of assignment.@ 
The statute defines A[s]ecured
party@ to
include Aa person
in whose favor a security interest is created or provided for under a security
agreement, whether or not any obligation to be secured is outstanding.@ 
Tex. Bus. & Com. Code Ann.
' 9.102(73) (Vernon Supp. 2005). 

These statutes make clear that a Alien@
requires more than an obligation to repay a debt.  Rather, it requires some instrument,
agreement, or act giving one creditor superior rights to collateral over all
other unsecured creditors or creditors with a subsequently obtained judicial
lien.  There is no evidence that
appellant=s parents
had any greater right to the five-acre tract than any other creditor.  Consequently, Section 3.402(a)(1) is
inapplicable.

Appellee alternatively cites Section 3.402(a)(6),
which provides an economic contribution claim for capital improvements to
property, as additional authority for her economic contribution award; but she
provides no authority for the proposition that the payment of her ex-husband=s prenuptial debt constitutes a capital
improvement.  The payment of an
antecedent debt for the acquisition of property, without more, is not a capital
improvement to property; therefore, Section 3.402(a)(6) is also inapplicable.

Consequently, we find the trial court abused its
discretion when it awarded a claim for economic contribution for the $2,000
payment to appellant=s
parents.  Whether this error materially
affects the trial court=s
just and right division of the property will be addressed separately.

Appointment of a Receiver.  

The trial court found the 12.03-acre tract
purchased during the marriage was community property and awarded each an
undivided one-half interest.  The court
then included the following provision in the divorce decree:

If the parties do not wish to retain their
undivided one-half interest in the 12.03 acre tract of land, as awarded
hereinabove, and neither is then able to acquire the interest of the other
party within 30 days after the entry of this Final Decree of Divorce, then and
in that event, IT IS ORDERED AND DECREED that the parties= undivided one-half interest in 12.03
acre tract of land out of Block 4 of the Charles S. Brown Survey Abstract No.
59, in Erath County, Texas, further described by metes and bounds as set forth
in Exhibit AA@ attached hereto and incorporated
herein for all purposes, shall be sold under the following terms and
conditions:

 








1. The Court will appoint a receiver that is agreed upon by the
parties, and the receiver shall take possession and sell the real property on
the terms and conditions as may be determined by this Court.

 

2. The net sales proceeds (defined as the gross sales price less
all costs and fees of sale) shall be distributed as follows:

 

a. One-half to BESSIE MAE NELSON; and

 

b. One-half to KENNETH RUSSELL NELSON.

 

Appellant argues that the trial court abused its discretion by
not considering whether the property was partitionable in kind and by
appointing the receiver without notice. 

The trial court has broad discretion to divide the
marital estate in a manner it deems just and right.  Tex.
Fam. Code Ann. ' 7.001 (Vernon 1998).  That authority includes the power to appoint
a receiver in appropriate circumstances. 
Rusk v. Rusk, 5 S.W.3d 299, 306 (Tex. App.CHouston
[14th Dist.] 1999, pet. denied).  The
Texas Supreme Court, however, has held that this discretion should not be
exercised until the trial court first determines if the property is subject to partition
in kind.  Hailey v. Hailey, 331
S.W.2d 299, 303 (Tex. 1960).  To make
this determination, trial courts should consider the nature and type of
property involved and the relative conditions, circumstances, capabilities, and
experience of the parties.  Walston v.
Walston, 971 S.W.2d 687, 693 (Tex. App.CWaco
1998, pet. denied).

Appellee concedes that the trial court should
first determine if the property is subject to partition in kind before
appointing a receiver.  She argues,
however, that the trial court had before it evidence concerning the suitability
of partitioning the acreage and that the court obviously considered whether the
property could be partitioned.  Appellee
points to her testimony that she was willing to have the tract surveyed and
divided equally or to have the entire tract sold and the proceeds divided
between the parties.  She also points to
appellant=s
testimony that he did not want to co-own the tract with appellee, nor did he
want the acreage sold and the net sale proceeds divided. 








The record does not support appellee=s contention that the trial court
considered partitioning the land. 
Appellant requested findings of fact and conclusions of law.  The trial court=s
findings do not address whether the property could be partitioned in kind, nor
do they otherwise explain the basis for the court=s
ruling.  Because findings of fact were
requested, we may not imply any omitted finding and, therefore, cannot conclude
the trial court considered partitioning the land.  Tex.
R. Civ. P. 299; Vickery v. Comm=n
for Lawyer Discipline, 5 S.W.3d 241, 252 (Tex. App.CHouston
[14th Dist.] 1999, pet. denied).

Appellant=s
second issue is sustained.  This case is
remanded to the trial court for further consideration of this issue.

The Characterization of Appellee=s Separate Property

The trial court found that the $16,616.51 that the
parties spent on their home=s
construction from the proceeds of the sale of appellee=s
house was her separate property. 
Appellant argues that this was error because appellee failed to overcome
the presumption of community property by clear and convincing evidence.

Assets owned by parties prior to their marriage
are separate property.  Tex. Const. 
art. XVI, '
15; Tex. Fam. Code Ann. ' 3.001 (Vernon 1998).  However, property possessed by either spouse
during or on dissolution of the marriage is presumed to be community
property.  Tex. Fam. Code Ann. '
3.003 (Vernon 1998).  Consequently,
appellee=s
Stephenville house and the net proceeds from its sale, so long as they were
segregated, were her separate property; and the five-acre tract appellant
purchased from his parents was his separate property.  

The question is what happened when appellee=s separate property was sold before the
marriage and the net proceeds were not maintained in a segregated account but
were arguably used before the marriage to pay at least a portion of the
construction costs for the home in which the parties lived after their
marriage?  Appellee was required to prove
by clear and convincing evidence that these funds were separate property.  Section 3.003(b).  This required evidence which Awill produce in the mind of the trier
of fact a firm belief or conviction as to the truth of the allegations sought
to be established.@  Tex.
Fam. Code Ann. '
101.007 (Vernon 2002).  Because the
proceeds were not maintained in a segregated account, appellee=s burden required her to trace and
identify the property she claimed to be separate.  Estate of Hanau v. Hanau, 730 S.W.2d
663, 667 (Tex. 1987).  








Tracing involves establishing the separate origin
of the property through evidence showing the time and means by which the spouse
originally obtained possession of the property. 
Ganesan v. Vallabhaneni, 96 S.W.3d 345, 354 (Tex. App.CAustin 2002, pet. denied).  Separate property will retain its character
through a series of exchanges so long as the party asserting separate ownership
can overcome the presumption of community property by tracing the assets on
hand during the marriage back to property that, because of its time and manner
of acquisition, is separate in character. 
Cockerham v. Cockerham, 527 S.W.2d 162, 168 (Tex. 1975).

Both parties testified that appellee used money
from the sale of her Stephenville house to pay construction costs on their new
home.  Appellee introduced the closing
statement from that sale.  This statement
confirmed that the house was sold before the parties=
marriage and that appellee realized more than the $16,616.51 she claimed as
separate property.  Appellee also
introduced a deposit slip which established that the sales proceeds were
deposited into appellant=s
bank account.  Finally, the checks that
appellee contends were written for construction costs were also introduced into
evidence.

Appellant does not dispute that the Stephenville
house and its proceeds were separate property. 
Appellant contends that appellee failed to overcome the community
presumption because she did not trace the funds after their deposit into his
account.  Appellant correctly notes that
not all of the construction checks appellee introduced into evidence were from
the account into which appellee=s
sales proceeds were deposited.  Most
were, but some were drawn on appellee=s
personal account at a different bank.[1]  Because this was appellee=s personal account, any money spent by
her from that account prior to the marriage was her separate property, and she
was not required to trace any transfer. 
Article XVI, section 15; Section 3.001.

We hold that the evidence is sufficient to support
the trial court=s finding
that the $16,616.51 was appellee=s
separate property and, therefore, overrule appellant=s
third issue on appeal.








Reimbursement of Funds Spent by Appellee Prior
to Marriage

Appellant contends in his fourth issue that, if
the trial court correctly characterized the $16,616.51 spent by appellee on the
marital home as her separate property, it nonetheless erred by finding she was
entitled to reimbursement because those funds were spent prior to the date of
marriage.[2]  Appellant relies on Tex. Fam. Code Ann. '
3.408 (Vernon Supp. 2005) which defines a reimbursement claim to include a Apayment by one marital estate of the
unsecured liabilities of another marital estate.@  Appellant urges that this precludes
reimbursement for any payments made prior to marriage because by definition a Amarital estate@
cannot exist prior to marriage.

Appellee concedes that she does not have a claim
for economic contribution for prenuptial expenditures but contends that the
court had the authority under Tex. Fam.
Code Ann. ' 7.007
(Vernon Supp. 2005) to award reimbursement. 
This statute instructs courts to apply equitable principles to:

(1) determine whether to recognize the claim after
taking into account all the relative circumstances of the spouses; and

 

(2) order a division of the claim for
reimbursement, if appropriate, in a manner that the court considers just and
right, having due regard for the rights of each party and any children of the
marriage.

 

Tex. Fam. Code Ann. ' 7.007(b) (Vernon Supp. 2005).








We believe appellant reads Section 3.408 too
narrowly.  Unlike Tex. Fam. Code Ann. '
3.403 (Vernon Supp. 2005) which defines economic contribution claims in
mandatory terms, the definition of economic reimbursement in Section 3.408 is
simply a non-exhaustive list of two potential reimbursement claims.  Neither example is defined by the timing of
the event.  Section 3.408(b).[3]  The legislature also provided five instances
in which a reimbursement claim may not be awarded.  See Tex.
Fam. Code Ann. '
3.409 (Vernon Supp. 2005).  These
instances are specific categories of expenditure, such as child support and
student loan payments.  None turn on the
timing of the expenditure.  Consequently,
we do not believe the legislature intended that a reimbursement claim could
never exist for prenuptial expenditures.

Reimbursement is an equitable remedy.  Vallone v. Vallone, 644 S.W.2d 455,
458 (Tex. 1982).  The Family Code
specifically provides that courts are to Aresolve
a claim for reimbursement by using equitable principles.@  Section 3.408(c).  Because reimbursement is an equitable
doctrine, a court of equity is bound to look at all the facts and circumstances
to determine what is fair, just, and equitable. 
Penick v. Penick, 783 S.W.2d 194, 197 (Tex. 1988).

Great latitude must be accorded to the trial court
in applying equitable principles to determine reimbursement claims because this
does not involve simply balancing the ledgers between competing marital
estates.  The discretion to be exercised
in evaluating a claim for reimbursement is equally as broad as the discretion
exercised by a trial court in making a just and proper division of the community
estate.  Lucy v. Lucy, 162 S.W.3d
770, 776 (Tex. App.CEl Paso
2005, no pet.).

The trial court found, and we have previously
affirmed, that the $16,616.51 spent by the parties on prenuptial construction
costs was appellee=s
separate property.  That money helped
fund a house on appellant=s
separate property.  The trial court did
not abuse its discretion when it found that appellee was entitled to
reimbursement.  Appellant=s fourth issue is overruled.

Calculation of Appellee=s Reimbursement Claim

Appellant contends that the reimbursement award is
incorrect because there was insufficient evidence to establish the enhancement
of value of the real property and because appellee failed to prove, and the
trial court failed to consider, the offsetting benefits appellee=s separate estate received.








A reimbursement claim for improvements to another
estate is measured by the Aenhancement
value@ to the
benefited estate.  Kimsey v. Kimsey, 965
S.W.2d 690, 700 (Tex. App.CEl
Paso 1998, pet. denied).  The party
claiming reimbursement has the burden of proof. 
Jensen v. Jensen, 665 S.W.2d 107, 110 (Tex. 1984).  The enhancement value is the difference
between the fair market value before and after any improvements.  Anderson v. Gilliland, 684 S.W.2d 673,
675 (Tex. 1985).  It is, thus, not simply
the improvements=
cost.  Sharp v. Stacy, 535 S.W.2d
345, 351 (Tex. 1976).

The initial dispute concerns the time period for
which the increase is measured. 
Appellant would restrict this to the marriage and contends there is no
evidence of the property=s
value as of April 9, 1995, when the parties were married.  In Anderson, 684 S.W.2d at 673, the
supreme court considered the proper method for calculating a reimbursement
claim.  The court characterized
reimbursement as an equitable right to be determined by equitable
principles.  Id. at 675.  The court rejected a cost-based rule and held
that equity required the benefited estate to pay for the enhanced value it
received.  Id.  This approach turns from formalistic
inquiries, such as costs incurred and timing, to a more generalized inquiry
into the value received.  We hold that it
is immaterial whether appellant=s
separate estate was enhanced before or after the marriage.  The relevant question is to what extent was
appellant=s
separate estate enhanced by appellee=s
contribution.

Appellee introduced the 1995 tax roll, which
showed the property=s value
was $9,664 as of January 1, 1995.  She
testified, without objection, that in her opinion this was a correct
assessment.  The parties had just started
construction of their house at the time of the assessment.  The tax appraisal assigned $6,030 of the
property=s value
to the land.  The remaining $3,634 was
attributed to improvements.

Appellee also introduced without objection the
current tax assessment.  This indicated
that the property=s value
had increased to $53,950.  Of this
amount, $43,750 was attributed to improvements, and the remaining $10,200 to
the land.  Appellee testified that she
was willing to rely upon this assessment.

            The trial court
accepted these values and entered findings of fact that included the following:

8.         On the date of marriage, the
fair market value of the Respondent=s
separate property 5.00 acres located in Erath County, Texas was $9,664.00.

 

9.         On the date of marriage, the
mortgage balance of the Respondent=s
separate property 5.00 acres located in Erath County, Texas, was $2,000.00. 

 

10.       On the date of marriage, the
equity in the Respondent=s
separate 5.00 acres located in Erath County, Texas, was $7,664.00.  (emphasis added)

 








The testimony established that these were not the values when the
parties married in April 1995 and their house was substantially complete but
that these were the values as of January 1, 1995, when construction had just
started.  Appellant claims that his
equity in the property as of the date of marriage was $7,664.  This represents the appraised value as of
January 1, 1995, less the $2,000 the parties subsequently paid his
parents.  Thus, his testimony really went
to the property=s value
as of January 1, 1995, rather than April 9, 1995, and was consistent with his
ex-wife=s
testimony.

We have held that appellee=s
reimbursement claim was not limited to contributions made subsequent to the
marriage but that it could include prenuptial expenditures.  Because the parties had not begun
construction at the time of the assessment, January 1, 1995, would be an
appropriate starting date for a reimbursement calculation.  The parties did not disagree at trial on the
property=s January
1 value.  Thus, findings eight, nine, and
ten would support a reimbursement determination if modified to reflect a
January 1 valuation date.  We are not
permitted, however, to modify the trial court=s
findings of fact to replace the date of marriage with January 1.  See Patel v. Ambassador Drycleaning &
Laundry Co., 86 S.W.3d 304, 309 (Tex. App.CEastland
2002, no pet.)(appellate courts cannot find facts which would be the basis for
a rendition, but may only Aunfind@ certain facts and remand for a new
trial).  We find, therefore, that the
trial court abused its discretion when it calculated the reimbursement
claim.  

Whether this requires a remand is a separate
question.  The Texas Supreme Court has
held that, even if a trial court abuses its discretion, remand is appropriate
only if the error materially affects the court=s
just and right division of the property. 
Jacobs, 687 S.W.2d at 732-33. 
We have previously found the trial court abused its discretion by
finding the marital estate had an economic contribution claim for the payment
of appellant=s debt to
his parents.  We have now also determined
that the trial court incorrectly determined appellee=s
reimbursement award.  Because these
findings are necessarily intertwined with the division of the community estate
and because we have been instructed that an intermediate court may not engage
in piecemeal editing of the property division, but should remand to the trial
court, see Jacobs, 687 S.W.2d at 732, we must remand this case to the
trial court for further consideration of this issue.








Because we must remand for recalculation, we
believe it appropriate to address appellant=s
remaining contentions concerning this calculation.  Appellant argues that merely because appellee
spent $16,616.51 in home construction costs is no evidence of a reimbursement
claim because cost incurred is not the appropriate measure.  We agree. 
The appropriate measure is the enhancement in value appellant=s separate property received.  Anderson, 684 S.W.2d at 675.  As previously noted, the trial court=s calculation may include prenuptial
contributions and, thus, may consider premarital enhancements in value.  The trial court=s
calculation should also consider any benefit the respective estates may have
received from appellant=s
separate property.  See Zieba v.
Martin, 928 S.W.2d 782, 788 (Tex. App.CHouston
[14th Dist.] 1996, no writ); see also Penick, 783 S.W.2d at 198 (noting
similarity of reimbursement to quantum meruit and, therefore, the requirement
of a contribution for which the contributing estate has not received a quid pro
quo and the receiving estate has been unjustly enriched).  But cf. Section 3.408(d) (ABenefits for the use and enjoyment of
property may be offset against a claim for reimbursement for expenditures to
benefit a marital estate or property that does not involve a claim for economic
contribution to the property.@).

Economic Contribution for Capital Improvements
to Appellant=s
Separate Property.

The trial court awarded appellee an economic
contribution claim of $9,300 for her one-half of the community estate=s contribution to appellant=s separate property.  This was apparently calculated by taking the
fair market value of appellant=s
five-acre tract at the time of divorce $53,950 less appellee=s expenditure of $16,616.51 in separate
property funds and multiplied by the fraction set out in Section 3.403.[4]  Because we have found the trial court abused
its discretion by awarding contribution for the $2,000 paid to appellant=s parents for his five acres, we must
reverse this award and remand for further proceedings. 








Just as we did with the trial court=s reimbursement award, we will address
appellant=s
remaining challenge to this award in the interest of judicial economy.  Appellant argues there is no evidence of the
property=s value
on the date of the marriage and, thus, insufficient evidence to establish the
enhancement of value.  We agree.  As previously discussed, the parties= testimony established the property=s value as of January 1.  This is sufficient for a reimbursement claim
but not for an economic contribution claim because an economic claim cannot
arise for premarital expenditures. 
Economic contribution is a statutory, as opposed to equitable, remedy;
therefore, the language of the statute is controlling.  The statute requires consideration of Athe equity in the property as of the
date of the marriage or, if later, the date of the first economic contribution
by the contributing estate.@
Former Tex. Fam. Code ' 3.403(b)(2)(B)(ii) (2001).

The trial court calculated appellant=s Anet
equity@ in the
five-acre tract by determining the fair market value on the date of divorce and
subtracting appellee=s
separate property contribution of $16,616.51. 
We assume this was done to avoid providing appellee a double recovery
with the reimbursement and contribution awards. We appreciate the trial court=s intention, but Section 3.403 does not
support this calculation.   Rather, it
requires the use of the Abenefited
property=s@ equity as of the date of divorce.  Section 3.403(b)(1). 

The property=s
equity as of the date of divorce should be multiplied by a fraction whose
numerator is the economic contribution to the property by the contributing
estate and whose denominator is the economic contribution plus the property=s equity as of the date of the marriage
or, if later, the date of the first economic contribution by the contributing
estate.  

Calculating the enhancement in value by utilizing
the property=s fair
market value on the date of marriage, as opposed to January 1, will lessen the
trial court=s
concern.  Because reimbursement is an
equitable remedy, if any further adjustment is necessary to assure a just and
right division and avoid a double recovery, the trial court has discretion to
fashion an appropriate reimbursement award. 
Appellant=s sixth
issue is sustained, and the case is remanded for further consideration of this
issue.

The Lien Imposed on Appellant=s Separate Property

Appellant=s
final point challenges the trial court=s
decision to impose a lien on his separate property.  Appellant acknowledges that a trial court may
impress an equitable lien against one spouse=s
separate property to secure the other=s
right of reimbursement for community improvements to that property.  Appellant contends that this authority does
not give trial courts the authority to impose a lien simply to secure a just
and right division of the community property.








Appellant argues that, if the trial court=s authority to impose a lien is not
restrained, courts will be free to use them to secure payment of judgments for
the division of the community estate. 
Appellant=s concern
is not present in this case.  The trial
court found that appellee had received an excess allocation of community
property and deducted this from her economic contribution and reimbursement
awards.  The net award, for which the
lien secured, represented reimbursement and economic contribution awards
arising out of improvements to appellant=s
separate property.  The trial court did
not abuse its discretion by awarding appellee a lien to secure that award.  Appellant=s
seventh issue is overruled.

                                                                     Conclusion

The judgment of the trial court is affirmed in
part and reversed and remanded in part. 
The portion of the judgment that characterizes the $16,616.51 spent on
house construction as Bessie Mae Nelson=s
separate property and imposes a lien on Kenneth Russell Nelson=s separate property is affirmed.  The portions of the judgment conditionally
appointing a receiver, determining economic contributions, and awarding
reimbursements are reversed; and these issues are remanded to the trial court
for further consideration.

 

 

RICK STRANGE

JUSTICE

 

March 23, 2006

Panel
consists of: Wright, C.J., and

McCall,
J., and Strange, J.











     [1]Appellant=s account was at Bank of America.  One check in Exhibit No. 10 was drawn on an
account in appellant=s name at First Gibralter Bank.  This check has the same routing number as his
Bank of America account and, therefore, is the same account.  Appellee=s name
was added to appellant=s Bank of America account before the marriage.  Appellant invites us to treat this as a different
account from his personal account; but, because the routing number is the same,
it is clear that this is in fact the same account.





     [2]Appellant
complains the trial court entered conflicting findings of fact in connection
with this issue.  The trial court=s Finding No. 11 was: APrior to
the marriage, Petitioner=s separate property estate expended the sum of
$16,616.00 for improvements to the Respondent=s
separate property 5.00 acres located in Erath County, Texas.@  In Finding No.
14, the court held: AOn the date of divorce, the equity in the Respondent=s separate 5.00 acres located in Erath County, Texas,
was $53,950.00, less $16,616.00 reimbursement to wife=s separate property estate for funds invested during
the marriage in the home on the 5 acre tract.@  (emphasis added)  Because the parties concede the monies were
spent prior to the marriage and because the thrust of Finding No. 14 concerned
the court=s equity calculation rather than the date of payment,
we need not concern ourselves further with this issue.





     [3]According
to the statute, a claim for reimbursement includes:

 

              
(1) payment by one marital estate of the unsecured liabilities of
another marital estate; and

                 
(2) inadequate compensation for the time, toil, talent, and effort of a
spouse by a business entity under the control and direction of that spouse.

 

Section
3.408(b).





     [4]This
suit was filed on August 7,  2003.  Section 3.403 was amended in the 2003
legislative session, effective September 1, 2003, for all cases filed on or
after that date.  Therefore, the prior
version of the statute applies.

 

The numerator of this fraction is the economic
contribution to the property by the contributing estate.  In this case, the numerator was the $2,000
paid to appellant=s parents for the five-acre tract and the $5,597.39 in
community funds spent on home construction costs, for a total of $7,597.39.

 

The denominator is the economic contribution to the
property by the contributing estate and the equity in the property as of the
date of the marriage or, if later, the date of the first economic contribution
by the contributing estate ($7,597.39 + $7,664 = $15,261.39).  

 

Because the trial court divided the community estate=s contribution claim equally between the parties, the
resulting number should be multiplied by one-half.   

 

 The
resulting formula is: ($37,334 * (7,597.39/15,261.39) * 2 = 9,300).